<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAMBERS OF | | MARTIN LUTHER KING |
| **SUSAN D. WIGENTON** | | COURTHOUSE |
| UNITED STATES DISTRICT | | 50 WALNUT ST. |
| JUDGE | January 28, 2021 | NEWARK, NJ 07101 |
| | | 973-645-5903 |

Patrick N. McMahon, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant*

Joshua L. Haber, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

>    **Re:**    ***United States v. Michael Goldblatt***
>          **Criminal Action No. 18-345 (SDW)**

Counsel:

      Before this Court is Defendant Michael Goldblatt's ("Defendant") Request for an Order Recommending that the Bureau of Prisons Transfer Defendant to Home Confinement ("Request"), pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2) ("Section 12003") and 18 U.S.C. § 3624(c) ("Section 3624").  (D.E. 32 at 1, 9.)  This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Request without prejudice.

<u>**DISCUSSION**</u>

A.

      The BOP holds the power to place certain inmates in home confinement prior to the end of their term of imprisonment.  18 U.S.C. § 3624.  In relevant part, Section 3624(C) provides that:

(c) Prerelease custody—
(1) In general.  The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford

that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph . . . .

*Id.* In response to the COVID-19 pandemic, the CARES Act allowed for a limited expansion of this power, stating that "[d]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . ." CARES Act, § 12003(b)(2). In Spring 2020, Attorney General Barr issued two memoranda pursuant to Section 12003, expanding the BOP's power and providing a "non-exhaustive" list of considerations such as the "age and vulnerability" of the inmate, the "security level" of the prison in which the inmate was held, with priority given to low and minimum-security facilities, and the inmate's crime of conviction.[1] Although "[t]he plain text of the CARES Act grants additional discretion to the Attorney General," which was used to supplement the BOP's home confinement authority through the Spring 2020 orders, neither the act nor the Attorney General's authorizations "require the BOP to release all at-risk, non-violent inmates." *Aigebkaen v. Warden*, Civ. No. 20-5732, 2020 WL 6883438, at *4–5 (D.N.J. Nov. 24, 2020).

A district court generally has limited authority to modify a federally-imposed sentence once it commences. *See Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020). Although the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence, the CARES Act did not grant the district court the power to order an inmate to home confinement. *United States v. Calabretta*, Crim. No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) ("The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP") (citation omitted). "Pre-release placement decisions, such as transfers to home confinement, [remain] committed to the BOP's sole discretion." *Aigebkaen v. Warden*, Civ. No. 20-5732, 2020 WL 6883438, at *4–5 (D.N.J. Nov. 24, 2020); *United States v. Dunich-Kolb*, Crim No. 14-150, 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020) (noting that the "BOP has the first and last word").

---

[1] *See* Office of the Attorney General, *Prioritization of Home Confinement As Appropriate In Response To COVID-19 Pandemic* (March 26, 2020), https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf; Office of the Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected By COVID-19* (April 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

In contrast, pursuant to 18 U.S.C. § 3621, when making the decision of where to house an incarcerated person the BOP regularly considers any statement made by the sentencing court that (a) "concern[s] the purposes for which the sentence to imprisonment was determined to be warranted," or (b) "recommend[s] a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621; *United States v. Doshi*, Crim. No. 13-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (the BOP must consider "a list of factors when determining where to house an incarcerated person," one of which is "any statement by the Court that imposed the sentence"). When considering whether an inmate should be granted home confinement, the BOP may also consider a "non-exhaustive list" of "discretionary factors," including: "the totality of each inmate's circumstances, the statutory requirements for home confinement, … the age and vulnerability of the inmate, the security level of the facility holding the inmate, the inmate's conduct in prison, the inmate's Prisoner Assessment Tool Targeting Estimated Risk and NEED (PATTERN) score, the inmate's home reentry plan, and the crime of conviction and corresponding danger to the community." *Adams v. Trate*, Civ. No. 20-237, 2020 WL 7337806, at *1–2 (W.D. Pa. Dec. 14, 2020).

## B.

Defendant is a 38-year old man with no underlying health conditions. (D.E. 33 at 2.) On February 16, 2018, Defendant pleaded guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession with intent to distribute more than 20 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). (D.E. 26.) On October 16, 2018, this Court imposed a sentence of 60 months' imprisonment. (D.E. 26 at 2.) Defendant is currently serving his sentence at the Federal Correctional Institution, Fort Dix ("FCI Fort Dix") in New Jersey. (BOP, *Find An Inmate* (Jan. 19, 2021, 2:00 P.M.), www.bop.gov/inmateloc/.)

On December 1, 2020, Defendant filed a Request asking this Court to recommend to the BOP that Defendant be transferred to home confinement to serve the remainder of his sentence. (D.E. 32.) Defendant's Request specifically notes that it does not move for relief based on the CARES Act's "Compassionate Release" provisions, pursuant to 18 U.S.C. § 3582(c)(1)(A) (*id.* at 2), but argues instead that Defendant is eligible for release to home confinement under Section 3624. (D.E. 32 at 2.) Although Defendant acknowledges that the authority to place a federal prisoner in home confinement is "limited to the Bureau of Prisons via the Attorney General," Defendant notes that the BOP "regularly relies on judicial recommendations regarding how a Defendant should serve his time." (D.E. 32 at 1.) Defendant bases this argument largely on two sources of authority: Attorney General Barr's April 3, 2020 memorandum and *United States v. Doshi*, Crim. No. 13-20349, 2020 WL 1527186, at *2 (E.D. Mich. Mar. 31, 2020). (*Id.*) In his Request, Defendant notes that his prior application to the BOP requesting transfer to home confinement was denied. (D.E. 32 at 3.)

Defendant acknowledges that he "suffers from no known medical issues," but argues that this "does not make him ineligible for relief," in part because reducing the number of individuals in prison during the pandemic would slow the spread of COVID-19. (*See id.* at 2-3.) Defendant also suggests that, although he has only served 25 months of his 60-month sentence, he has been significantly rehabilitated. (*Id.* at 3, 6 (describing behavioral changes such as quitting smoking

marijuana, "avail[ing] himself of counseling and treatment programs ..., tak[ing] college courses, training, and classes").) Defendant also avers that, due to the pandemic, his sentence has been "dramatically" altered, as movement within FCI Fort Dix is now "significantly limited," visits have been curtailed, and inmates remain in their cells "as the pandemic rage[s] around them." (*Id.* at 6.) Defendant also states that his offense was "not a violent one" and asserts that while he "does have a prior criminal history, it is devoid of any felony conviction for crimes of violence." (*Id.* at 6.) Further, Defendant discusses the personal toll that his absence from home due to incarceration has caused to his family, in particular his young daughter. (*Id.* at 5-6.) Defendant also describes the pandemic crisis at FCI Fort Dix, noting that the facility has "303 inmates and 28 staff members" who are "actively positive with the virus." (*Id.* at 4-5 (collecting a significant number of cases discussing the concerning state of affairs at FCI Fort Dix).)

On January 4, 2020, the Government filed an opposition to Defendant's motion. (D.E. 33.) The Government does not respond to Defendant's arguments regarding the lack of safety at FCI Fort Dix due to the outbreak. (*See id.*) Instead, the Government contends that Defendant's Request seeks an "advisory opinion" as to prison placement, issued "long after judgment of conviction became final." (*Id.* at 1.) The Government also argues that the "BOP is solely responsible for determining an inmate's place of incarceration," and that there is no authority to "support a judicial 'recommendation' of home confinement." (*Id.* at 5-6.) Additionally, the Government notes that the BOP "has good reason for not transferring [Defendant] to home confinement," as he is not "high risk if he were to contract COVID-19," committed "serious crimes [that] warranted that sentence," and has "served less than half of his 60-month sentence." (*Id.* at 2.) Finally, the Government explains that Defendant's Sentencing Guideline Imprisonment Range was "120 to 150 months' imprisonment," due to his status as a previously convicted felon with an "arsenal of four firearms ... kept in the same location [as] his illegal drug trade." (*Id.* at 3.) Nonetheless, this Court "granted a downward departure, based on [Defendant's] cooperation, and sentenced [him] to 60 months." (D.E. 33 at 3.)

C.

It is well established that this Court lacks the jurisdiction to order the BOP to release an individual to home confinement. (D.E. 32; D.E. 33; *United States v. Williams*, Crim. No. 17-0379, 2021 WL 37536, at *9 (D.N.J. Jan. 4, 2021) (noting that "the Court has no authority to grant" defendant's request "to serve the remainder of his sentence under home confinement ...").) Where parties have specifically requested that the District Court order their release to home confinement, these requests have been roundly denied. *See, e.g., United States v. Dunich-Kolb*, Crim. No. 14-150, 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020) (noting that defendant's request for "transfer to home confinement" "must ... be denied"); *United States v. Calabretta*, Crim. No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) (discussing defendant's request that "as an alternative to release, the Court order him to serve the remainder of his sentence in home confinement," and stating that "[t]he Court has no authority to issue such an order").

While the District Court clearly lacks the jurisdiction to "issue any orders predicated upon 18 U.S.C. Section 3624(c)(2)" instructing the BOP to transfer a defendant to home confinement,

this Court may choose to issue a recommendation.[2]  *See, e.g.*, *United States v. Knox*, Crim. No. 15-445, 2020 WL 1487272, at *2 (S.D.N.Y. Mar. 27, 2020) (granting defendant's "request for a recommendation that BOP allow him to serve the remainder of his sentence" partially in home confinement, in part due to the "exigencies" of the pandemic); *Doshi*, 2020 WL 1527186, at *1 *see also United States v. Cruz*, 455 F. Supp. 3d 154, 160 (M.D. Pa. 2020).

Nonetheless, although Defendant is arguably "eligible" for home confinement (*see* D.E. 32 at 2) under the BOP's broadened discretionary policies, he is not "entitled" to such relief.[3]  *See* 18 U.S.C. § 3621(b)(5) (BOP's designation as to home confinement "is not reviewable by any court"). It is within the BOP's discretion to "evaluate factors" concerning Defendant's criminal history and health conditions before releasing an inmate to home confinement.  *See United States v. Hoskins*, Crim. No. 01-00266, 2018 WL 1605595, at *3 (M.D. Pa. Apr. 3, 2018).  Here, the BOP previously denied Defendant's request for home confinement.  (*See* D.E. 32, Ex. C.)  This decision was reasonable and aligned with the relevant sentencing considerations.  (D.E. 33 at 2 (describing the factors that weigh against Defendant's early release, including his lack of underlying conditions, the fact he has served less than half of his sentence, and his serious crimes).)  As explained by the Government, the seriousness of Defendant's crimes is particularly relevant, because:

> [Although] he was a previously convicted felon, [Defendant] possessed an arsenal of four firearms, which he kept in the same location where he ran his illegal drug trade.  His guns included one capable of holding an extended magazine and another with an obliterated serial number, making it virtually impossible to trace.  Because his criminal history made him a career offender … [his] advisory Guideline's range was 120 to 150 months' imprisonment.  He nonetheless received substantial leniency [during sentence when this Court] sentenced him to 60 months.

(D.E. 33 at 3.)  Therefore, recommending early release to home confinement for Defendant would likely be at odds with the accepted goals of sentencing.[4]  *See* 18 U.S.C. § 3553(a) (appropriate

---

[2] As this Court declines to issue any such recommendation, this Opinion refrains from analysis of the Government's arguments in opposition.

[3] This is precisely why Congress codified the relevant sections of the CARES Act that expanded BOP's ability to extend home confinement to inmates: "to provide BOP a tool by which to alleviate COVID-19 concerns in federal prisons." *Adams v. Trate*, Civ. No. 20-237, 2020 WL 7337806, at *1–2 (W.D. Pa. Dec. 14, 2020) (citing *United States v. Mathews*, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020) (citing CARES Act § 12003(a)(2)).

[4] Defendant avers that he has quelled his dependence on marijuana, taken advantage of resources available in prison, and reformed many of his prior criminal ways.  (D.E. 32, Exs. D, E, F.)  Defendant has also completed a significant roster of educational courses.  (D.E. 32, Ex. F.)  It also seems clear that Defendant's family is ready to "provide the support and assistance" he will need upon release, and that they are ready to house him in North Carolina.  (D.E. 32 at 5-6.)  These facts bode well for Defendant's future once he is ultimately released.

This Court is also sympathetic to the fact that the pandemic has changed Defendant's sentence and, in many ways, made that sentence significantly more challenging for both Defendant and his family.  To this point, this Court has read and considered the letters provided by Defendant's brother, Mr. Adam Goldblatt, and partner, Sharmella Watts.  (D.E. 32, Exs. C, D.)  It is commendable that Defendant's family, who are clearly experiencing challenges in Defendant's absence, made drastic changes in their personal lives to support Defendant's daughter in his absence.  (*See id.*)  As explained above, however, this Court retains little power to resentence at this stage.  Further, this Court

sentencing factors include respect for the law and deterrence of others). This is particularly true given the fact that Defendant's sentence has already been meaningfully reduced from the recommended guideline, and a further reduction would create an extreme disparity between those sentenced for similar crimes. *See Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing"). Thus, this Court refrains from granting Defendant's Request. *See United States v. Kraynak*, Crim. No. 17-188, 2021 WL 65990, at *3 (M.D. Pa. Jan. 7, 2021) (declining to issue recommendation to BOP based on the facts "underlying facts of defendant's conviction").

By denying Defendant's Request, this Court does not intend to minimize FCI Fort Dix's ongoing COVID-19 outbreak. (*See, e.g.*, D.E. 32 at 2.) This Court notes that the Government's Reply did not: counter the statistics provided by Defendant regarding the FCI Fort Dix outbreak; explain any relevant safety precautions in place at FCI Fort Dix; or suggest that actions are being taken to correct any prior mismanagement of the crisis at the facility.[5] This Court continues to express great concern regarding the lack of control exhibited at this facility over the spread of disease. *See United States v. Khair*, Crim. No. 15-404, 2020 WL 6689757, at *3 n.4 (D.N.J. Nov. 13, 2020) (recognizing that "conditions at FCI Fort Dix are very concerning," and noting skepticism at the "Government's confidence in BOP containment efforts").

This Court is sympathetic to Defendant's concerns regarding the risk of COVID-19 and recognizes that his lack of preexisting health conditions likely offers him little comfort as the pandemic spreads within the facility. Although this Court declines to grant Defendant's Request, it emphasizes that the COVID-19 infection rate at FCI Fort Dix is gravely concerning. (*See generally* D.E. 32.) However, for the reasons articulated above, this Court lacks the power to order Defendant to be released to home confinement, and it declines to issue a recommendation for such relief in this case.

---

exhibited significant leniency when initially imposing Defendant's sentence, for many of the same reasons that have been presented in Defendant's Request. (*See* D.E. 33 at 3.) For these reasons, this Court continues to believe that Defendant's current sentence should be served out as imposed. Should the situation at FCI Fort Dix change in a meaningful way, Defendant retains the right to refile a Motion for Compassionate Release.

[5] As noted above, the Government fails to respond in any manner to Defendant's detailed arguments regarding his specific COVID-19 risk at FCI Fort Dix, due to the ongoing outbreak. (*See* D.E. 33.) Perhaps the COVID-19 response measures at FCI Fort Dix are indefensible. Without a Government response, this Court has turned to the BOP's policy statements, which suggest that it has attempted to triage care by moving the most vulnerable quickly into home-confinement. *See* BOP, *Frequently Asked Questions Regarding Potential Inmate Home Confinement In Response To The COVID-19 Pandemic* (Jan. 20, 2021, 10:00 A.M.), https: //www. bop. gov/coronavirus/faq.jsp#hc_eligibility. This Court has also considered the fact that, where courts have granted requests for recommendations to release inmates to home confinement during the pandemic, those inmates have often faced increased risk due to preexisting health conditions. *See,e.g.*, *United States v. Hicks*, Crim. No. 96-80335, 2020 WL 7714606, at *3 (E.D. Mich. Dec. 29, 2020) (noting that, in *Doshi*, the defendant suffered from hypertension and diabetes). As noted previously, although some conditions materially increase the risk of COVID-10, Defendant does not suffer from any such conditions. *See* Centers for Disease Control, *People With Certain Medical Conditions* (Jan. 20, 2021, 4:00 P.M.), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

**<u>CONCLUSION</u>**

      For the foregoing reasons, Defendant's Request for an Order Recommending that the BOP Transfer Defendant to Home Confinement is **DENIED**.  An appropriate order follows.

                                                 \_\_\_\_/s/ Susan D. Wigenton_____

                                               **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties